IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ONTARIO A. DAVIS,

                 Plaintiff,                      ORDER

        v.                                 10-cv-674-slc[1]

BARBARA DELAP, MARY MILLER,
SGT. NOVINSKA, NURSE JANE DOE,
PETER HUIBREGTSE and RICK HABLE,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this proposed civil action for monetary relief brought pursuant to 42 U.S.C. § 1983, plaintiff Ontario Davis raises constitutional claims regarding his medical and dental treatment, the medical co-pay policy and the policy prohibiting inmates from wearing thermal underwear and coats at the Wisconsin Secure Program Facility. Plaintiff is proceeding under the in forma pauperis statute, 28 U.S.C. § 1915, and has made an initial partial payment.

---

[1] For the purpose of issuing this order, I am assuming jurisdiction over this case.

Because plaintiff is a prisoner, I am required by the 1996 Prison Litigation Reform Act to screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915A.  In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously.  <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972).

After reviewing plaintiff's complaint, I conclude that it violates Fed. R. Civ. P. 20, which does not allow the joinder of a number of defendants in one suit unless the claims asserted against the defendants arise out of the same occurrence or series of occurrences. Accordingly, I will reserve ruling on the merits of his claims until plaintiff fixes the Rule 20 violations.

ALLEGATIONS OF FACT

A.  <u>The Parties</u>

Plaintiff Ontario Davis is an inmate at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Defendant Peter Huibregtse is the warden of the Wisconsin Secure Program Facility, where defendant Mary Miller is the nursing supervisor, defendant Jane Doe is a nurse, defendant Novinska is a sergeant and defendant Rick Hable is a unit manager. Defendant Barbara Delap is the dental director for the Department of Corrections.

2

B.  Dental Problems and Medical Co-pay

As the dental director, defendant Dr. Delap controls the number of dentists who come to the prison and is responsible for insuring that the dentists have the equipment necessary to perform their duties.   Generally, dentists are contracted on a monthly basis to visit prisons, but they are at the prison for limited times during that month.   There is one dentist assigned to the Wisconsin Secure Program Facility.   The dentist is available one day each week for the dental care of 500 prisoners.   There is no on-site dentist available at the facility who can prescribe "controlled medication."

Since at least May 2005, one of plaintiff's wisdom teeth has caused chronic inflamation.   On January 4, 2008, plaintiff broke the fillings in his tooth while eating meatloaf at the Wisconsin Secure Program Facility.   In April 2008, plaintiff paid a $7.50 co-pay and dental personnel fixed the broken fillings.   During the April visit to the dentist, the dental personnel determined that other teeth required restoration and scheduled a followup visit.   At the April 15, 2008 followup visit, dental personnel restored other fillings.   Plaintiff paid another $7.50 medical co-pay.

Plaintiff filed a complaint with the inmate complaint review system regarding the medical co-pay, arguing that he was charged the co-pay wrongfully because he was excluded from having to pay under the rules of the Department of Corrections.   The complaint was rejected and affirmed by defendant Huibregtse.   Huibregtse has permitted and encouraged

3

his subordinates to invoke the medical co-pay policy any time an inmate seeks medical attention, with the result that officers try to dissuade inmates from seeking medical attention.

On March 31, 2009, plaintiff was seen by a dentist who said plaintiff's wisdom tooth needed to be pulled or it could cause problems for plaintiff. The dentist told plaintiff to submit a dental request to have the tooth pulled. On April 5, 2009, plaintiff submitted a dental service request, stating that his wisdom tooth needed to be pulled. On April 7, 2009, dental personnel responded to plaintiff's request, telling him that his name had been placed on a waiting list and that the prison had to call a particular dentist to perform difficult extractions. They asked plaintiff to be patient.

Sometime later, plaintiff noticed that other prisoners who had arrived at the Wisconsin Secure Program Facility after he did had received tooth extractions. Plaintiff filed another dental request asking that his tooth be pulled.

On March 12, 2010, dental personnel placed plaintiff on the "essential wait list" and stated "we will call you in to have this situation re-evaluated." Plaintiff was seen by Dr. Weber, who said he could perform the surgery but needed a "pan x-ray" machine in order to get a complete view of the entire root before he could extract the tooth. Dr. Weber said it would take no longer than a month for the x-ray to arrive.

On July 27, 2010, plaintiff experienced a severe headache and extreme pain on the

4

right side of his face near his wisdom tooth.  He pressed the emergency button in his cell asking to see the nurse.  Several minutes later, defendant Sergeant Novinska answered the call.  After plaintiff described his pain, Novinska told him that he would have to pay the $7.50 medical co-pay to see a nurse or, in the alternative, he could take tylenol.  Plaintiff told Novinska that he did not care about the co-pay and asked to see a nurse.  Several minutes later, defendant Novinska called plaintiff on the intercom, offered him tylenol again and reminded him about the co-pay for seeing a nurse.  Plaintiff told Novinksa that she was not qualified to diagnose his medical conditions or to prescribe tylenol.  Novinksa responded that the nurse, defendant Jane Doe, was present and was checking his medical records to determine whether he was eligible for tylenol.  A few minutes later, Novinska told plaintiff that tylenol was "on the way."  Plaintiff asked again to see the nurse, but Novinska turned off the intercom.  A correctional officer brought tylenol to plaintiff's cell, which plaintiff took, but his pain continued.  Later, when plaintiff questioned Novinska about the incident, Novinska told plaintiff that the nurse had not wanted to see him.  Plaintiff asked defendant Miller, the nursing supervisor, for the name of defendant Jane Doe, but Miller refused to reveal the name of the nurse and told plaintiff to direct any questions regarding the incident to her.

On July 29, 2010, plaintiff submitted a dental service request for pain pills for the recurring severe headaches and extreme pain that he was experiencing.  Dental personnel

responded to his request, stating that they could not give the plaintiff "controlled medication," but that one of the nurses had recommended 800mg of ibuprofen.   Plaintiff did not receive any ibuprofen.

Since July 27, 2010, plaintiff has experienced severe headaches.  He cannot function when he has these headaches.

## C.   Coat and Thermal Underwear Policy

The Department of Corrections permits inmates to purchase personal clothing, including thermal underwear.  However, defendant Rick Hable distributed a memorandum prohibiting inmates in the "quasi general population" unit at the Wisconsin Secure Program Facility from wearing thermals or coats outside their cells before October 1 each year.  Before October 1, 2010, the temperature was in the 40-degree range during the morning hours when plaintiff and other inmates had their outside recreation time.  Plaintiff was prohibited from wearing thermals or coats during recreation, although the correctional officers were wearing sweaters and raincoats.  Plaintiff filed a complaint, but it was dismissed.  Defendant Huibregtse affirmed the dismissal.

## DISCUSSION

Plaintiff asserts that he is raising three causes of action:   (1) that defendants

6

Huibregtse and Delap violated the Eighth Amendment's prohibition on cruel and unusual punishment by failing to provide an adequate number of dentists and dental equipment, resulting in delay and unnecessary pain to plaintiff; (2) defendants Huibregtse and Miller violated the Eighth Amendment by failing to provide adequately trained nurses and encouraging prison staff to threaten inmates with the medical co-pay and that defendants Novinska and nurse Jane Doe violated plaintiff's rights by offering him tylenol, threatening him with the co-pay and refusing to evaluate his medical needs; and (3) defendants Hable and Huibregtse violated the Eighth Amendment by implementing and enforcing the policy forbidding inmates from wearing thermal underwear and coats before October 1 of each year.

Asserting all of these claims in the same lawsuits is prohibited by Fed. R. Civ. P. 20, which does not allow plaintiff to include separate claims against different defendants or sets of defendants in the same lawsuit.  The rule prohibits a plaintiff from joining many defendants in a single action unless the plaintiff asserts at least one claim for relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Although Fed. R. Civ. P. 18 allows a party to join unrelated claims against defendants in a suit, this rule applies only after the plaintiff has satisfied Rule 20's requirements for joinder of parties.  Intercon Research Assn., Ltd. v. Dresser Ind., Inc., 696 F.2d 53, 57 (7th

Cir. 1983) (quoting 7 Charles Alan Wright, <u>Federal Practice & Procedure</u>).  This means that the core set of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18.

For example, a plaintiff could have one lawsuit for breach of contract against defendants W, X, Y and Z and an unrelated lawsuit for personal injury against defendants A, X and Z.  If the plaintiff wanted to proceed with both claims in the same lawsuit under Rules 18 and 20, he would have to dismiss W and Y from the first lawsuit or he would have to dismiss A from the second lawsuit.  In this way, the same "core" of defendants (X and Z) is common to both claims.

Applying Rules 18 and 20 to the factual allegations in the complaint, I conclude that plaintiff's claims belong in two separate lawsuits:

- <u>Lawsuit #1</u>: Plaintiff's claims against defendants Huibregtse, Delap, Novinksa and Jane Doe regarding adequacy of dental care, nurse training, the medical co-pay and treatment of plaintiff's headaches on July 27, 2010.

- <u>Lawsuit #2:</u> Plaintiff's claims against defendants Hable and Huibregtse regarding the thermal underwear and coat policy.

Each of these separate lawsuits involves claims that arise out of the same series of transactions or occurrences and include the same defendants or subset of defendants.  Therefore, each may proceed in a single lawsuit.  Lumped together, however, the claims cannot proceed in one lawsuit.  Plaintiff will have to decide which claims to pursue.  He may

8

do so by submitting a response saying specifically which numbered lawsuit he wishes to pursue.  If he wants to pursue both lawsuits, he should explain which one he wants to pursue under this case number.  The remaining lawsuit will be assigned a separate case number, and plaintiff will be required to pay an initial partial filing fee for the second lawsuit (and will ultimately be responsible for the full $350 filing fee).  If plaintiff chooses to dismiss one of the lawsuits voluntarily, he will not be obligated to pay the $350 for the other lawsuit.  In addition, a lawsuit dismissed voluntarily would be dismissed without prejudice, allowing plaintiff to bring it at another time.

Plaintiff should be aware that because it is not clear at this time which of his separate lawsuits he will pursue, I have not undertaken a full screening of the merits of the claims raised in either lawsuit identified above or determined whether they comply with Fed. R. Civ. P. 8.  Once plaintiff identifies the suit or suits he wants to continue to litigate, I will screen the individual actions that remain as required under 28 U.S.C. § 1915(e)(2).  Because plaintiff faces filing fees and potential strikes for each lawsuit he pursues, he should consider carefully the merit and relative importance of each of his potential lawsuits when choosing which of them he wishes to pursue.

ORDER

IT IS ORDERED that

1.  Plaintiff Ontario Davis may have until January 4, 2011 in which to identify for the court the separately numbered lawsuit identified in the body of this opinion on which he wishes to proceed under the number assigned to this case.

2.  Plaintiff may have until January 4, 2011, in which to advise the court whether he will prosecute the remaining lawsuit or whether he wishes to withdraw it voluntarily.  If plaintiff dismisses the second lawsuit voluntarily, he will not owe a filing fee.  If plaintiff advises the court that he intends to prosecute the second lawsuit (the one not assigned to this case number), he will owe a separate $350 filing fee and will be assessed an initial partial payment.

3.  If plaintiff fails to respond to this order by January 4, 2011, I will enter an order dismissing the lawsuit as it presently exists for plaintiff's failure to prosecute.

Entered this 21st day of December, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

10